KESSENICK GAMMA & FREE, LLP
SCOTT C. KESSENICK (State Bar No. 295999)
skessenick@kgf-lawfirm.com
JASON M. ALLEN (State Bar No. 284432)
jallen@kgf-lawfirm.com
JAMES MAXWELL COOPER (State Bar No. 284054)
mcooper@kgf-lawfirm.com
1 Post Street, Suite 2500
San Francisco, California 94104
Telephone: 415.362.9400
Facsimile: 415.362.9401

Attorneys for Plaintiff
BROWN & TOLAND PHYSICIAN
SERVICES ORGANIZATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND / SAN FRANCISCO DIVISION

| | |
|---|---|
| Brown & Toland Physician Services Organization, Inc., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Allscripts Healthcare, LLC, a limited liability company,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF**<br><br>***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED*** |

**COMPLAINT**

Plaintiff Brown & Toland Physician Services Organization, Inc. ("BTPSO" or "Plaintiff") brings this action against Defendant Allscripts Healthcare, LLC ("Allscripts") for unlawful and unfair practices, including price gouging and information blocking. In support of its claims and request for injunctive relief, Plaintiff alleges as follows:

**INTRODUCTION**

1. BTPSO is a healthcare management services organization that provides electronic health records ("EHR") software and services to approximately 170 Bay Area physicians.

2.     EHRs are a vital component of health information technology and modern medical practices. Rather than being maintained on paper, patients' medical records are maintained as EHR. Physicians and other healthcare providers use the EHR to securely access and revise a patient's medical and treatment histories in real-time, such as during or in preparation for an office visit. The EHR also provides evidence-based tools—such as information on drug interactions, or information regarding COVID-19—that physicians can use to make informed decisions about a patient's care.

3.     Since 2004, BTPSO has licensed Allscripts' EHR software and provided it to BTPSO physicians for use in treating their patients, and paid Allscripts to provide the many related services critical for ensuring functionality and physician access to EHR.

4.     In 2018, BTPSO began considering alternative providers for EHR software and services. BTPSO sought proposals from various EHR providers. Allscripts participated in that process.

5.     In 2019, BTPSO decided to transition its EHR system from Allscripts to Epic Systems Corporation ("Epic"). This transition is an enormous undertaking that involves approximately 170 physicians. The transition also requires Allscripts' cooperation, mainly in the form of continued support of EHR software and services until BTPSO has fully transitioned to Epic in approximately mid-2021.

6.     Allscripts has been on notice of BTPSO's EHR transition to Epic since April 2019—and that BTPSO was considering other EHR options since 2018. Allscripts knows that BTPSO's physicians will need its software and related services until the system is retired.

7.     Consistent with this, in early April 2020, Allscripts agreed to keep providing EHR software and support to BTPSO into 2021, with [REDACTED] options to renew and with no mention of any increase in rates.

8.     BTPSO relied on Allscripts' agreement to provide EHR software and services into 2021, and as a result, believed it could complete its EHR transition to Epic in a safe and manageable process, without any coverage gaps in its EHR software and services.

9.     But in July 2020, Allscripts reneged on its agreement and sent BTPSO a draft

contract to renew its software and services for ▮▮▮▮. Because BTPSO expects to complete its transition to Epic in 2021, Allscripts' insistence on a ▮▮▮▮ equated to a demand that BTPSO pay approximately ▮▮▮▮ to keep its current software and services, including software and services it no longer needs, for the six-to-twelve months before its transition to Epic is complete—an estimated mark-up of approximately 861%.

10. After BTPSO objected, Allscripts offered to reduce the term lengths—though still longer than the ▮▮▮▮ to which Allscripts previously agreed, and still longer than BTPSO needs—resulting in an estimated total cost of ▮▮▮▮. This amounted to an effective price mark-up of approximately 251% over what BTPSO would pay at existing rates for the Allscripts' software and services it still needs.

11. After BTPSO objected to the extortionate rate increase, Allscripts notified BTPSO earlier this month that it intends to stop providing critical software and related services to BTPSO—and, by extension, approximately 170 physicians contracted with BTPSO—at the end of 2020 unless BTPSO agreed to Allscripts' new contractual terms. This notice leaves physician offices at serious risk of being unable to provide effective care to patients amid a pandemic.

12. Put differently, Allscripts has given BTPSO an ultimatum: pay us more than 250% of market value, or we will shut down your physicians' access to EHR software and services, in the middle of a pandemic. Hoping to capitalize on this health crisis, Allscripts is threatening to cut off approximately 170 Bay Area physicians' access to their patients' medical records, severely impairing their ability to provide medical care, unless BTPSO pays it ▮▮▮▮, including for services it will not need and will never use.

13. Given the serious patient safety risks associated with cutting off physician and patient access to EHR, federal and state law prohibit this conduct.

14. Allscripts' attempts to renew BTPSO's current products and services at mark-ups of approximately 861% and 251% violate the prohibition against price gouging in California's Executive Order N-44-20, as extended by Executive Order N-78-20, and California Penal Code section 396.

15. Furthermore, as a health information technology developer and vendor of health

information technology certified under the Office of the National Coordinator for Health Information Technology ("ONC") Health IT Certification Program, Allscripts is subject to federal law prohibiting this type of extortionate conduct.

16. Through this Complaint, BTPSO asks this Court to enjoin Allscripts from price gouging and from preventing physician and patient access to patient medical records in violation of federal and state law, and to require Allscripts to continue providing EHR software and services BTPSO and its contracted physicians at market rates until BTPSO completes its transition to Epic.

**THE PARTIES**

17. BTPSO is a corporation organized and existing under the laws of California and has its principal place of business in Oakland, California. BTPSO is wholly owned by California Pacific Medical Group, Inc., d.b.a. Brown & Toland Physicians ("BTP"), which contracts with hundreds of Bay Area physicians.

18. BTPSO serves as a management services organization to BTP and administers EHR software and services to many of BTP's contracted physicians.

19. Upon information and belief, Allscripts is a North Carolina limited liability company owned by Allscripts Healthcare US, LP, a Delaware partnership, which is owned by Allscripts Holdings, LLC and Allscripts Holdings 2, LLC ("the Allscripts Holdings Companies"), both of which are Delaware companies.

20. Upon information and belief, the sole member of the Allscripts Holding Companies is Allscripts Healthcare Solutions, Inc., a Delaware corporation whose principal place of business is in Chicago, Illinois.

**JURISDICTION**

21. This Court has subject matter jurisdiction over the first and third claims for relief under 28 U.S.C. § 1331 because the claims are predicated, in whole or in part, on Allscripts' violation of section 300jj-52 of the Public Health Service Act, 42 U.S.C. §§ 201 *et seq.*, and related regulations.

22. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because Plaintiff's federal and state law claims form a part of the same case

and controversy within the meaning of Article III of the United States Constitution.

23. This Court also has subject matter jurisdiction over each claim for relief on the separate and independent ground of diversity of citizenship between the parties under 28 U.S.C. § 1332. The value of the injunctive relief sought herein exceeds $75,000, exclusive of interest and costs.

24. This Court has personal jurisdiction over Defendant pursuant to Cal. Code of Civ. Proc. § 410.10 and Fed. R. Civ. Proc. 4(k). Allscripts is registered to do business in the state and has committed and directed tortious and unlawful acts against citizens and residents of this state, including Plaintiff, in the course of doing business here.

## VENUE

25. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of this district within the meaning of 28 U.S.C. § 1391(c), and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district.

## INTRADISTRICT ASSIGNMENT

26. Pursuant to Civil L.R. 3-2(c) and (d), this civil action is suitable for assignment to the San Francisco or Oakland Divisions of this Court. This civil action is a non-excepted category, and a substantial part of the events giving rise to the subject matter of this action arose in the County of Alameda, California.

## FACTUAL ALLEGATIONS

### Background

27. Since 2004, Allscripts or its predecessors-in-interest have provided EHR software and related services to BTPSO's contracted physicians pursuant to the TouchWorks System Agreement dated March 31, 2004 (the "Master Agreement"), amendments thereto, and client orders.

28. The bundle of EHR software and services that Allscripts provides to BTPSO includes three essential components: (1) TouchWorks EHR; (2) FollowMyHealth; and (3) certain support services categorized as "Service Desk" and "Global Managed Services." The EHR

1  software and services provided by Allscripts are collectively referred to herein as "EHR Products."

2  29. Approximately 170 physicians contract with BTPSO to use Allscripts' EHR Products to manage the care and treatment of their patients, including by enabling them to consult and maintain their patients' medical information and to facilitate the provision of coordinated care across BTPSO's network of primary care physicians, specialists, hospitals, and ancillary providers.

30. Patients also use the EHR Products. One component of the EHR Products is a patient platform that allows patients to access their health information, request appointments, fill prescriptions, and get real-time health updates, including lab results, medication lists, and immunization reminders.

31. BTPSO itself uses the EHR Products to support clinical quality, enhance operational efficiency, and capture and provide clinical and administrative data and support network integration.

**Allscripts Agreed to Continue Providing Software and Services Into 2021**

32. In 2018, BTPSO began accepting requests for proposals for EHR Products. Several providers of EHR Products submitted proposals, including Allscripts.

33. In 2019, BTPSO decided to transition to Epic for its EHR system and services. It issued a press release in April 2019 to announce the decision and described several benefits the change would bring. Among other things, the transition will allow BTPSO to exchange records with other healthcare entities that use an interoperable system.

34. Allscripts and BTPSO negotiated for the continued provision of software and services through the completion of BTPSO's transition to Epic in 2021. In a February 2020 e-mail exchange with Allscripts' Area Vice President for Managed Services, BTPSO proposed extending Allscripts' provision of software and services—including the three most significant components, TouchWorks EHR, FollowMyHealth, and Global Managed Services—beyond December 31, 2020, for the parties to continue on a ▮▮▮▮▮▮▮▮ basis. This would allow the parties to safely and orderly wind-down their relationship while ensuring BTPSO's contracted physicians would have uninterrupted access to EHR during the transition period.

35. On April 15, 2020, Allscripts declined BTPSO's proposal of ▮▮▮▮▮▮▮▮

1  renewals but offered to provide the requested software and wind-down services—a "bundle"
2  including "TouchWorks [EHR]," "FollowMyHealth," and "[Global Managed Services] Hours for
3  support"—"on a ▓▓▓ basis" beginning January 2021. BTPSO responded the same day and
4  accepted Allscripts' counter-offer of a ▓▓▓ renewal term, stating "Yes, that is fine."

5      36. Given Allscripts' agreement to ▓▓▓ renewal terms for software and services,
6  BTPSO anticipated evaluating its needs for EHR Products on a ▓▓▓ basis as it transitioned to
7  its new Epic EHR. Based on 2020 rates, BTPSO anticipated spending at least ▓▓▓, and up to
8  ▓▓▓ should it be needed, for Allscripts' EHR Products in 2021. BTPSO will require
9  nothing further from Allscripts after completing its transition to Epic in 2021.

**Allscripts' Repudiation of Transition Agreement and Unlawful Contract Offers**

11     37. Despite this agreement, in July 2020, Allscripts sent a written amendment to BTPSO
12  with entirely different terms. Rather than the agreed-upon ▓▓▓ terms,
13  Allscripts' proposed amendment had a ▓▓▓, requiring BTPSO to pay for all software and
14  services ▓▓▓, despite its imminent transition to Epic's EHR. Moreover, Allscripts
15  increased the prices for Global Managed Services by approximately 20%.

16     38. Allscripts' proposal equated to a demand that BTPSO pay approximately
17  ▓▓▓ to keep its current software and services for six-to-twelve months. Because BTPSO
18  will only need reduced software and services in 2021, and will stop using Allscripts' EHR Products
19  after 2021 and probably by mid-2021, this represented a price increase of approximately *861%*,
20  assuming conservatively that BTPSO requires services throughout 2021.

21     39. After BTPSO objected to these terms, Allscripts verbally offered to reduce the term
22  for MIT Services (a service bundle that includes Global Managed Services) from ▓▓▓ to ▓
23  ▓, and all other contract terms from ▓ to ▓▓▓. But again, because BTPSO will not need
24  the same amount of Allscripts' software or services in 2021 and will not need them at all by the
25  middle or end of 2021, this offer represented an effective price increase of approximately *251%*,
26  again assuming conservatively that BTPSO requires services throughout 2021.

27     40. In response to Allscripts' unlawful demands, on August 20, 2020, BTPSO informed
28  Allscripts that (a) Allscripts had already agreed in April 2020 to renewable ▓▓▓ terms during

the transition to Epic; (b) Allscripts' second offer with the reduced term lengths still required BTPSO to pay for products and services that it will not need or want, and therefore represented at least a 251% price increase in violation of California law; and (c) that by threatening to cut off physician and patient access to EHR unless BTPSO accedes to inflated prices and ▇ contract terms, Allscripts has engaged in information blocking, prohibited under federal law.

41. In the weeks that followed, BTPSO sent multiple requests to Allscripts for a response. Finally, on September 9, 2020, Allscripts replied that the parties had "plenty of time" to "work through this" because the contract did not expire until December 31, 2020. Allscripts promised to respond the next week.

42. Instead, Allscripts waited until September 18, 2020, to provide a response, in which it denied liability for violating the information blocking statute and claimed that the April 15, 2020 agreement was not binding. Furthermore, rather than retract its threats to shut down the EHR Products, Allscripts' letter purported to provide written notice that it ***would not*** renew any software, license, or services expiring on December 31, 2020. In short, Allscripts expressly threatened to terminate BTPSO's EHR Products—and, in turn, the ability of BTPSO's physicians to access their patients' medical records—unless BTPSO agreed to pay an exorbitant amount for wind-down services, and to continue paying for those services well beyond the time when BTPSO will need them.

### **Allscripts' Conduct Violates Federal Law**

43. Allscripts is a health information technology developer and vendor of health information technology certified under the ONC Health IT Certification Program ("ONC Certification").

44. As a health information technology developer, Allscripts is subject to the federal prohibition against information blocking. *See* 42 U.S.C. §300jj-52. In addition, having ONC Certification means Allscripts must meet applicable certification requirements, including a prohibition against information blocking. *See* 42 U.S.C. § 300jj-11(c)(5)(D). In return for meeting ONC Certification, users of Allscripts EHR are eligible for certain federal compensation incentives. Allscripts' maintaining ONC Certification is crucial for its customers, and in turn, crucial for

Allscripts to remain competitive in the EHR industry. Congress instructed the Secretary of the Department of Health and Human Services, "[n]ot later than 1 year after December 13, 2016," to require, through notice and comment rulemaking, as a condition of certification and maintenance of certification, that the health information technology developer or entity *not* engage in information blocking. *See id.* ONC promulgated regulations prohibiting information blocking on or after November 2, 2020, as a condition of certification. *See* 45 C.F.R. § 170.401. Allscripts nevertheless has threatened to shut down EHR after December 31, 2020, unless BTPSO accepts the exorbitant price increases that Allscripts has demanded.

45. The Public Health Service Act prohibits "information blocking," defined as any practice "likely to interfere with, prevent, or materially discourage access, exchange, or use of electronic health information." *See* 42 U.S.C.A. §§ 300jj-52(a). The statute specifically provides that "information blocking" includes practices that restrict "***transitions between certified health information technologies***." 42 U.S.C.A. §§ 300jj-52(a)(2)(A) (emphasis added).

46. Allscripts may not threaten to terminate health care providers' access to medical records to extract unreasonable contract terms; nor may it impede or discourage BTPSO's transition to another EHR system.

## **Allscripts' Conduct Violates State Law**

47. Access to EHR is always an essential component of the modern practice of medicine, but it is particularly crucial in this current state of emergency, as health care providers—including BTPSO's physicians—confront a pandemic.

48. In response to the COVID-19 pandemic, California's governor declared a state of emergency on March 4, 2020, which triggered certain protections against price gouging set forth in California Penal Code section 396. *See* Executive Order N-44-20 (April 3, 2020), extended by Executive Order N-78-20 (September 3, 2020).

49. The Executive Order declares that no business shall "sell or offer to sell any [medical supplies] for a price that is more than 10 percent greater than the highest price charged by that person or entity for that item on February 4, 2020[.]" Executive Order N-44-20, extended by Executive Order N-78-20. It also provides that each violation of the order shall be redressable "as

any other unlawful business practice under the Unfair Competition Law, Business and Professions Code section 17200 et seq." *Id.*

50. California Penal Code section 396(b) similarly prohibits charging "excessive and unjustified prices" for a number of goods and services, including medical supplies, at a price "more than 10 percent greater than the price charged by that person for those goods or services immediately prior to the proclamation or declaration of emergency." Cal. Pen. Code § 396(b).

51. The statute also provides that a violation of the statute "shall constitute an unlawful business practice and an act of unfair competition" under section 17200 of the Business and Professions Code. *Id.* § 396(i).

52. Allscripts' demanded price increases violate the Executive Order, California Penal Code section 396, and the Unfair Competition Law.

**Harm to BTPSO**

53. Unless enjoined, Allscripts' actions will cause irreparable harm to BTPSO, to its physicians, and to the patients they treat. Allscripts' threatened termination of EHR access and related services would have devastating effects. Without EHR, BTPSO's health care providers will be unable to review their patients' medical records, update those records to reflect new information, or facilitate coordinated care among different providers and facilities. Their patients (which number greater than 300,000) will likewise be unable to access their own medical records or even schedule or cancel appointments and fill prescriptions.

**FIRST CLAIM**

**UNLAWFUL BUSINESS PRACTICES: INFORMATION BLOCKING**

54. Plaintiff incorporates by reference each and every allegation in this complaint as if fully set forth herein.

55. California Business and Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business acts or practices."

56. Allscripts' conduct violates California's Unfair Competition Law (Bus. & Prof. Code § 17200) because it engages in illegal information blocking under federal law.

57. Its unlawful practices include, but are not limited to:

a. Violating 42 U.S.C. section 300jj-52 and 45 C.F.R. § 170.401 by threatening to terminate BTPSO's EHR access before BTPSO's transition to Epic is complete unless BTPSO agrees to contract terms amounting to, at minimum, a 251% price increase. This conduct constitutes prohibited "information blocking" under applicable law. 42 U.S.C. § 300jj-52(a)(1).

58. BTPSO, its contracted physicians, and their patients will suffer irreparable harm if Allscripts is not enjoined from its ongoing and threatened violations of the information blocking statute.

## SECOND CLAIM

## UNLAWFUL BUSINESS PRACTICES:  PRICE GOUGING

59. Plaintiff incorporates by reference each and every allegation in this complaint as if fully set forth herein.

60. California Business and Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business acts or practices."

61. Allscripts' conduct violates California's Unfair Competition Law (Bus. & Prof. Code § 17200) because it is engaged in illegal price gouging under state law.

62. Its unlawful practices include, but are not limited to:

a. Violating California's Executive Order, dated April 3, 2020 (the "Executive Order") which declares that no business shall "sell or offer to sell any [medical supplies] for a price that is more than 10 percent greater than the highest price charged by that person or entity for that item on February 4, 2020[.]"

b. Violating California Penal Code section 396(b), which prohibits charging "excessive and unjustified prices" for a number of goods and services, including medical supplies, at a price "more than 10 percent greater than the price charged by that person for those goods or services immediately prior to the proclamation or declaration of emergency."

63. BTPSO, its contracted physicians, and their patients will suffer irreparable harm if Allscripts is not enjoined from its ongoing and threatened violations of state price gouging laws.

## THIRD CLAIM

## UNFAIR BUSINESS PRACTICES

64. Plaintiff incorporates by reference each and every allegation in this complaint as if fully set forth herein.

65. Defendant's conduct constitutes unfair business acts and practices in violation of section 17200.

66. Such acts and practices include, but are not limited to, attempting to obtain undue and excess profits by threatening to disable physicians' and patients' access to EHR during a pandemic.

67. BTPSO, its contracted physicians, and their patients will suffer irreparable harm if Allscripts is not enjoined from the unfair business acts and practices described herein.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court grants the following relief:

A. For a preliminary and permanent injunction prohibiting Allscripts from engaging in conduct that violates applicable federal and state law.

B. For a preliminary and permanent injunction prohibiting Allscripts from terminating EHR Products, including TouchWorks EHR, FollowMyHealth, and Global Managed Services for support, until BTPSO completes its transition to Epic, thereby maintaining the status quo.

C. For such other equitable relief necessary to prevent Allscripts from engaging in conduct that violates applicable federal and state law.

D. For such other and further relief as the Court deems just and proper, including but not limited to reasonable attorneys' fees under California Code of Civil Procedure section 1021.5.

Dated: 10/16/2020                     KESSENICK GAMMA & FREE, LLP


                                                        */s/ Jason M. Allen*
                                                        Jason M. Allen

                                                        Attorneys for Plaintiff
                                                        *Brown & Toland Physician Services Organization, Inc.*